IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NANCY GIUSTO, individually and as surviving spouse, and NANCY GIUSTO, as Administratrix of The Estate of MICHAEL GIUSTO, deceased,<br><br>    Plaintiffs,<br><br>             v.<br><br>INTERNATIONAL PAPER COMPANY and EVOQUA WATER TECHNOLOGIES LLC,<br><br>    Defendants. | Civil Action No.<br>1:19-cv-00646-SDG |

## OPINION AND ORDER

This matter is before the Court on separate motions for summary judgment filed by Defendants Evoqua Water Technologies LLC (Evoqua) and International Paper Company (IP) [ECF 189; ECF 191]. IP has also filed a motion to strike or exclude certain affidavits [ECF 213]. For the following reasons, and with the benefit of oral argument, Evoqua's motion is **GRANTED** and IP's motions are **DENIED**.

## I.   BACKGROUND

IP owns and operates the Flint River Mill located in Oglethorpe, Georgia (the Mill).[1] The Mill consists of four units and manufactures cellulose fiber that is

---

[1]   ECF 207, ¶ 1; ECF 217, ¶ 6.

subsequently incorporated into various downstream products.[2] Evoqua is an independent company contracted by IP to deliver water demineralization equipment to the Mill.[3] At all relevant times, Michael Giusto worked for Prim Industrial Contractors (Prim), an independent company contracted by IP to perform environmental cleaning services at the Mill.[4]

On March 12, 2018, Michael Giusto arrived at the Mill to attend a contractor safety meeting.[5] After the meeting concluded, he drove his truck to various locations at the Mill.[6] Eventually, he made his way to the Utilities Unit.[7] As Michael Giusto walked through the scrubber area of the Utilities Unit, he tripped and fell into a pool of water overflowing from the floor U-drains. There were no witnesses to this fall.[8] Plaintiffs allege Michael Giusto tripped over a hose—attached to a demineralization trailer owned by Evoqua—laying across

---

[2]   ECF 207, ¶ 1.

[3]   *Id.* ¶ 4.

[4]   *Id.* ¶ 3.

[5]   *Id.* ¶¶ 5–7.

[6]   *Id.* ¶ 13.

[7]   *Id.*

[8]   *Id.* ¶ 26.

the floor U-drains that was submerged in, and camouflaged by, the overflown water.

After his fall, Michael Giusto drove himself home.[9] Later that evening, his wife—Nancy Giusto—found him with burn injuries and drove him to the hospital.[10] That same evening, Prim informed IP of a potential incident at the Mill.[11] The next day, an IP employee located Michael Giusto's hard hat and safety glasses laying on the floor of the scrubber area by the hose.[12] Michael Giusto was subsequently transferred to a burn unit in Augusta, Georgia with a combination of second and third degree burns to 15% of his body.[13] Although he was discharged from the hospital on March 22,[14] he ultimately died on March 25.[15]

Plaintiffs initiated this action in the State Court of Fulton County, Georgia on January 4, 2019.[16] Defendants removed the action to this Court on February 7.[17]

---

[9]    *Id*. ¶¶ 42–45.

[10]   ECF 217, ¶¶ 3, 40. *See also* ECF 191-20.

[11]   ECF 207, ¶ 47.

[12]   *Id*. ¶ 49.

[13]   ECF 191-20.

[14]   *Id*.

[15]   ECF 191-21.

[16]   ECF 1-2.

[17]   ECF 1.

On October 6, 2020, IP and Evoqua filed separate motions for summary judgment.[18] On November 10, IP filed its motion to strike or exclude certain affidavits relied on by Plaintiffs in their responses in opposition to summary judgment.[19] On May 4, 2021, the Court heard oral argument from the parties on these pending motions.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-movant must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. A fact is considered "material" only if it may "affect the outcome of the suit under the governing law." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing *Anderson v. Liberty*

---

[18]   ECF 189; ECF 191.

[19]   ECF 213.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248) (punctuation omitted).

In opposing a motion for summary judgment, the non-movant "may not rest upon the mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). If the non-movant relies on evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). *See also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177 (11th Cir. 2020) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). But the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Sears*, 922 F.3d at 1205 (citing *Anderson*, 477 U.S. at 249). The Court must "view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Newcomb v. Spring Creek Cooler Inc.*, 926 F.3d 709, 713 (11th Cir. 2019). *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012)

("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson*, 477 U.S. at 255).

## III.   DISCUSSION

Plaintiffs assert a wrongful death and personal injury negligence claim against both IP and Evoqua. "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017). Since the claim against each Defendant demands a distinct analysis, the Court addresses the summary judgment motions separately.

### A.   Evidentiary disputes

IP and Evoqua raise certain evidentiary issues that permeate the summary judgment briefing and are important to their resolution. For example, IP has filed an independent motion to strike certain affidavits submitted by Plaintiffs. IP and Evoqua additionally argue Plaintiffs cannot rely on other evidence that constitutes inadmissible hearsay.

#### 1.   IP's motion to strike or exclude affidavits

IP seeks to strike or exclude affidavits from four of Michael Giusto's former co-workers—Joshua Youmans, Gerald Ussery, Michael Bridgers, and Michael

Wagner—as well as his daughter, Jalyn Giusto. IP argues: (1) all the affidavits were not properly disclosed in violation of Rule 37(c), and (2) the affidavits from Youmans, Ussery, and Bridgers are "sham affidavits."

IP first relies on a failure to disclose theory. Under the federal rules, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule 26(a), in turn, provides that:

> [A] party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a).

IP argues Plaintiffs violated these rules by submitting affidavits containing undisclosed facts. According to IP, Plaintiffs should have come forward with this information during the discovery period. The Court concludes, however, that IP should have been on notice since the inception of this case that these individuals possessed relevant knowledge. For example, Plaintiffs filed and served their initial

disclosures on March 11, 2019.[20] These disclosures contained a list of individuals who "are believed to have discoverable information regarding [the] claims."[21] Youmans, Ussery, Bridgers, Wagner, and Jalyn Giusto are all named.[22] Then, on June 5, 2019, Plaintiffs served IP with discovery responses that again listed these individuals as persons with knowledge.[23] That Plaintiffs at least twice alerted IP to these individuals during the discovery period undercuts IP's theory of surprise.

But, avers IP, Plaintiffs did not disclose the very facts these individuals ultimately attested to in their affidavits. IP does not dispute, however, that it possessed the right to depose each of these individuals during the extended fact discovery period. Indeed, IP apparently understood the importance of doing so; it subpoenaed Youmans and Bridgers—and Evoqua subpoenaed Jalyn Giusto—to appear for depositions. Yet all three depositions were unilaterally cancelled by the Defendants and never rescheduled. The Court finds no reason to penalize Plaintiffs now for IP's litigation strategy. What is more, there is no requirement that an individual be deposed before the Court may consider his or her sworn

---

[20]   ECF 25.

[21]   *Id*. at 13–17.

[22]   *Id*.

[23]   ECF 191-7.

testimony in an affidavit on summary judgment. *JVC Am., Inc. v. Guardsmark, L.L.C.*, No. CIVA 1:05-cv-0681 JOF, 2006 WL 2443735, at *12 (N.D. Ga. Aug. 22, 2006) ("[T]he court may consider the affidavit of a witness who was not deposed during discovery."). *See also* Fed. R. Civ. P. 56(c)(4); *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) ("The District Court shall consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if *everything* in the record demonstrates that no genuine issue of material fact exists.") (punctuation omitted) (emphasis in original).

IP fares no better with its sham affidavit argument. The Eleventh Circuit has adopted the following sham affidavit rule:

> When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

*Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

*See also Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) ("The Eleventh Circuit, in limited circumstances, allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or

her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously.").

This doctrine must be "applied sparingly because of the harsh effect it may have on a party's case." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). To be sure, it "only operates in a limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those which create an issue of credibility or go to the weight of the evidence." *Furcron*, 843 F.3d at 1306 (quoting *Tippens*, 805 F.2d at 953 ("A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.")). At bottom, "[a]n opposing party's affidavit should be considered although it differs from or varies from his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." *Tippens*, 805 F.2d at 953.

Here, IP requests that the Court strike or exclude affidavits filed by Youmans, Ussery, and Bridgers. It argues that: (1) Youmans's and Bridgers's affidavits conflict with prior deposition testimony given in a related worker's compensation action; and (2) Ussery's and Bridgers's affidavits conflict with statements given in a related OSHA investigation. IP's argument, however, runs into two threshold obstacles.

First, the Eleventh Circuit has "never squarely addressed whether, and in what circumstances, a district court may disregard the affidavit of a non-party that is inherently inconsistent with deposition testimony given by the non-party previously in the same case." *Reese v. Herbert*, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008). *See also Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986) ("[W]hile a district court may find that a *party's* contradictory affidavit constitutes a sham, we would be unable, absent great trepidation, to affirm a similar finding with respect to a disinterested *witness'[s]* contradictory affidavit.") (emphasis in original). Put another way, "the law of this circuit disfavors the exclusion of third-party affidavits under the 'sham affidavit' rule." *Merritt v. Hub Int'l Sw. Agency Ltd.*, No. 1:09-cv-00056-JEC, 2011 WL 4026651, at *3 (N.D. Ga. Sept. 12, 2011). Youmans, Ussery, and Bridgers are not parties to this case. To the extent IP believes these individuals are biased or not credible, that is a determination for the factfinder to make.

Second, the Eleventh Circuit has equally cautioned that it "would be reluctant to disregard an affidavit of a witness, whether or not a party in the case, on the ground that it is inconsistent with testimony the witness gave in another proceeding." *Reese*, 527 F.3d at 1270 n.28. *See also Baysa v. Gualtieri*, 786 F. App'x 941, 946 (11th Cir. 2019) ("Our Court appears to have applied the *Van T. Junkins*

[sham affidavit] rule only when an affidavit or declaration contradicts sworn deposition testimony. We have seen no instance in which a litigant's testimony from another judicial proceeding was contradicted by later deposition testimony and the later was subsequently disregarded, and the [defendants] cite to none.") (bracket text added) (citations omitted). Again, IP did not depose any of these individuals in this action. It instead relies on statements given in prior proceedings. Nothing in these affidavits conflicts with any information articulated by these individuals in this specific proceeding. This too supports the denial of IP's motion.

Even eschewing these issues, IP has not adequately demonstrated that the prior statements from Youmans, Ussery, and Bridgers are sufficiently contrary to their sworn affidavits to warrant exclusion. Although the statements contained in their affidavits can be fairly characterized as more descriptive and precise, they are not flatly contradictory. These variances can be considered by the factfinder in determining the credibility of these individuals. The Court declines to apply the sham affidavit rule to the affidavits at issue. IP's motion to strike or exclude is denied.

## 2.    Evidence containing hearsay

IP and Evoqua contend Plaintiffs improperly rely on hearsay evidence. Hearsay is defined as an out-of-court statement that is offered as evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is normally inadmissible unless permitted under a specific exception. *See* Fed. R. Evid. 803, 804, 807. Similarly, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). But it is equally true that "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id*. at 1232.

After the incident, but prior to his death, Michael Giusto made statements to Nancy Giusto, Jalyn Giusto, Youmans, and Wagner regarding the cause of his trip and fall.[24] These statements constitute hearsay. None of these declarants uttered them, yet their testimony is being offered for the truth of the matter asserted. Moreover, their testimony is not admissible simply because Michael Giusto is now deceased. *See Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1255 (11th

---

[24]  ECF 206-3 (Wagner Aff.), ¶ 4; ECF 206-4 (Nancy Giusto Dep. Tr.), at 14:1–24; 149:19–23; ECF 206-5 (Jalyn Giusto Aff.), ¶ 4; ECF 206-6 (Youmans Aff.), ¶ 6.

Cir. 1999). Plaintiffs, nonetheless, contend these statements could be reduced to an admissible form at trial under Federal Rule of Evidence 807. This rule—known as the "residential exception"—may apply when a hearsay statement is not otherwise admissible but:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

The standard for admissibility is onerous. "Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009). It only applies "when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *Id*. The standard is not, however, insurmountable and the Court retains "considerable discretion in determining admissibility." *Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1358 (11th Cir. 1986).

As an initial matter, the second factor is easily satisfied. Michael Giusto's own statements replaying his experience of falling in the scrubber room are likely

the most probative evidence on this point. Consideration at this stage hinges on whether those statements are supported by sufficient guarantees of trustworthiness. As the Eleventh Circuit recently summarized:

> In determining if the statement has such exceptional guarantees of trustworthiness, we look to the circumstantial guarantees that existed when the declarant originally made the statement. A court must consider many factors to determine if these circumstantial guarantees existed, including the probable motivation of the declarant in making the statement, the circumstances under which the statement was made, the knowledge and qualifications of the declarant, and the existence of corroborating evidence. Additionally, statements made more contemporaneously with the event are more likely to be based on fresh recollections. Overall, the court must look at the totality of the circumstances surrounding the making of the statement and those rendering the declarant particularly worthy of belief.

*Bratt v. Genovese*, 782 F. App'x 959, 965 (11th Cir. 2019) (citations and punctuation omitted). *See also Rivers v. United States*, 777 F.3d 1306, 1313 (11th Cir. 2015).

In a factually synonymous case, a court in this district found it appropriate to consider similar evidence on a motion for summary judgment. *Estate of Hedayatzadeh by Hedayatzadeh v. Deutsche Lufthansa Aktiengesellschaft*, No. 1:16-cv-2576-CAP, 2017 WL 6994571, at *6 (N.D. Ga. Nov. 30, 2017). In that case, the plaintiffs represented the estate of a deceased man who allegedly tripped and fell down slippery stairs on an aircraft. *Id.* at *1–*3. There were no witnesses to the

man's fall. *Id*. The only evidence proffered by the plaintiffs demonstrating how the accident occurred and the condition of the stairs were statements made by the man to his wife and daughter prior to his death. *Id*. at * 3. The defendant argued that summary judgment should be entered in its favor because these statements constituted inadmissible hearsay. *Id*. at * 4. The *Hedayatzadeh* court disagreed and found the evidence admissible under the residual exception. *Id*. at *3–*6. Specifically, that court found that the statements "meet[ ] the requisite level of trustworthiness" because:

> [He] made the statement while suffering from a life threatening condition that caused his death three months later, he did so during what appears to be one of his first communications with a family member about the fall, and he also made the statement nearly 17 months before this action was filed.

*Id*. at *6. *Compare with Kincaid v. Autumn Vill. 2 Assisted Living Facility Liab. Co.*, No. 5:08-cv-348 (HL), 2010 WL 1565478, at *3 (M.D. Ga. Apr. 19, 2010) (holding hearsay statement uttered by deceased man prior to his death regarding cause of trip and fall lacked guarantees of trustworthiness to be admissible because the plaintiff made the statement "at a time when he was the plaintiff in this case" and he ultimately "passed away for reasons unrelated to his fall").

Here, the Court concludes that Michael Giusto's statements contain sufficient indicia of trustworthiness to be considered at this stage.

Like *Hedayatzadeh*, Michael Giusto made each statement in close temporal proximity to his fall while suffering from severe burns. There is no clear motivation for him to have fabricated the cause of his fall at that time. Rather, Michael Giusto seemingly made these statements on route to or at the hospital in response to inquiries from family members and co-workers. The statements are also corroborated by subsequent inspections conducted by IP and OSHA.[25]

IP's arguments to the contrary are unpersuasive. It argues Nancy Giusto may have possessed a motive to fabricate the statements because she contacted an attorney during Michael Giusto's stay in the hospital. It also argues Michael Giusto's statements were too inconsistent and variable. Viewing the totality of the circumstances, the Court disagrees and rules that the statements are sufficiently trustworthy to be considered at this stage under the residual hearsay exception.

IP relatedly argues that an OSHA investigative report compiled after the incident is inadmissible hearsay. Rule 803(8) contains a hearsay exception for public records. According to that rule:

> A record or statement of a public office is admissible if:
> (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against

---

[25]   ECF 206-2; ECF 206-15.

> the government in a criminal case, factual findings from
> a legally authorized investigation; and (B) the opponent
> does not show that the source of information or other
> circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

An OSHA investigative report may be "properly admitted under the public records exception to the general bar on hearsay." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1348 (11th Cir. 2020) ("OSHA reports fall squarely within the public records exception for 'factual findings from a legally authorized investigation.'") (quoting Fed. R. Evid. 803(c)). To determine the trustworthiness of an OSHA report, courts must "look at a nonexhaustive list of four factors: the timeliness of the investigation, the investigator's skill/experience, whether a hearing was held, and possible bias." *Id*. at 1343 (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988)). "[T]he burden of demonstrating a lack of trustworthiness is on the party opposing admission." *Crawford*, 977 F.3d at 1347.

IP has failed to carry its burden here. It argues the OSHA report is untrustworthy because it relies on multiple levels of hearsay; however, the Eleventh Circuit has rejected that contention. *Crawford*, 977 F.3d at 1348 ("The reports are not 'mere collections of statements from a witness,' but are 'factual findings that are based upon the knowledge or observations of the preparer of the report.'") (quoting *Mazer*, 556 F.3d at 1278). IP additionally asserts

that the OSHA report is untrustworthy because the investigator did not visit the Mill until two months after the incident. According to *Crawford*, this too is not dispositive. 977 F.3d at 1348–49 ("There is no evidence of untrustworthiness suggested by the reports themselves. They are timely: only two of the reports were delayed as much as six months after the incidents in question and five of the eight investigations began within three weeks. There is no evidence that the investigators who drafted the reports were unskilled or inexperienced. And there is no evidence of possible bias."). Therefore, the Court finds the OSHA report is capable of being reduced to an admissible form and will consider it at this stage.

**B.     IP's motion for summary judgment**

It is undisputed that IP owns and operates the Mill. A property owner owes a nondelegable duty to its invitees to exercise ordinary care in keeping its premises safe. O.C.G.A. § 51-3-1. *See also Simmons v. Universal Prot. Servs., LLC*, 349 Ga. App. 374, 376 (2019). "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1997). However, the occurrence of a fall alone "does not give rise to liability on the part of a proprietor." *Sunlink Health Sys., Inc. v. Pettigrew*, 286 Ga.

App. 339, 341 (2007). *See also Lee v. Food Lion*, 243 Ga. App. 819, 820 (2000) ("[A]n owner or occupier of land is not an insurer of the safety of its invitees. The mere occurrence of an injury does not create a presumption of negligence.") (citation omitted). The fundamental question is whether the owner possessed "superior knowledge of a condition that may expose [ ] invitees to an unreasonable risk of harm." *Ward v. Autry Petrol. Co.*, 281 Ga. App. 877, 877 (2006).

To establish a premises liability claim, a plaintiff "must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." *Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2009). Georgia courts have repeatedly cautioned that "issues of the defendant's negligence, the plaintiff's negligence, and the plaintiff's lack of ordinary care for his own safety are generally not susceptible of summary adjudication" and should only be decided as a matter of law "where the evidence is plain, palpable, and undisputable." *Ward*, 281 Ga. App. at 877 (quoting *Robinson*, 268 Ga. at 748).

### 1.    IP's knowledge of the hazard

IP argues it is entitled to summary judgment on the first prong of the premises liability test because there is no evidence showing: (1) what caused

Michael Giusto's fall or (2) that IP had knowledge of the overflowing water or submerged hose. The first assertion is largely answered by the Court's prior evidentiary discussion. Under Georgia law, "[w]here the plaintiff does not know of the cause or cannot prove the cause, there can be no recovery, because an essential element of negligence cannot be proven." *Moore v. Teague*, 255 Ga. App. 220, 222 (2002) (collecting cases). Put another way, the cause of a fall cannot be left to "mere speculation, guess, or conjecture," and summary judgment should be entered if "there is not even a scintilla of evidence to create a material issue of fact for jury determination." *Id.* (collecting cases). Here, Plaintiffs submit Michael Giusto's own statements that constitute evidence showing that he tripped over a hose submerged in the overflown water from the floor U-drains. Plaintiffs also point to corroborating investigative reports compiled by IP and OSHA. As such, Plaintiffs have met their burden to produce evidence as to the cause of Michael Giusto's fall.

Next, IP argues there is no evidence showing it had knowledge of the hazard. Under Georgia law, "[a] proprietor's knowledge of the danger may be actual or constructive." *Barbour-Amir v. Comcast of Ga./Va., Inc.*, 332 Ga. App. 279, 282 (2015). For actual knowledge, a plaintiff "must do more than merely show that [the premises owner's] employees had a general knowledge that a hazardous

condition might exist." *J.H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 469 (1999).

*See also New v. Kohl's Dep't Stores, Inc.*, No. 1:18-cv-2529-MLB, 2021 WL 1192970, at

*5 (N.D. Ga. Mar. 30, 2021) ("Actual knowledge is defined as direct and clear

knowledge."). Here, there is no direct evidence showing that IP knew of the

overflowing water in the scrubber area that purportedly concealed the hose in the

very moments before Michael Giusto's fall. Plaintiffs, however, point to evidence

that several IP employees previously witnessed water backed up and overflowing

from the floor U-drains and pooling in the scrubber area. Also, in 2017, a different

contractor slipped and injured himself while working in this same area; IP's own

incident report stated that "[t]he area routinely floods when the scrubber sump

dumps sludge (a mild caustic solution and ash) which overflows the u-drain

spreading onto floor."[26] Moreover, there is evidence that IP employees knew hoses

often lay on the ground in that area. Given these facts, a factfinder could

reasonably infer that IP had actual knowledge of the hazard in this case.

Constructive knowledge, conversely, may be demonstrated in two ways:

> First, constructive knowledge can be demonstrated by
> showing that an employee was positioned in the
> immediate vicinity and had the opportunity and means
> to discover and remove the hazard. . . . Second,
> constructive knowledge may be shown by evidence that

---

[26]   ECF 206-18.

the alleged hazard was present for such a length of time that it would have been discovered had the proprietor exercised reasonable care in inspecting the premises.

*Lee*, 243 Ga. App. at 821. For the first method:

Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures.

*Donastorg v. Rainbow USA, Inc.*, 342 Ga. App. 215, 218–19 (2017). *See also Lomax v. Kroger Co.*, 348 Ga. App. 726, 729 (2019); *Prescott v. Colonial Props. Tr., Inc.*, 283 Ga. App. 753, 755 (2007).

Here, it is undisputed that Evoqua dropped off the demineralization trailer on March 4, 2018 and IP maintained responsibility for the hose and U-drains at all times thereafter. There is no evidence establishing the length of time the hose laid over the U-drains or remained submerged under the overflown water. However, an IP employee testified that the "sluicing" process performed prior to Michael Giusto's fall made it more likely for the U-drains in the scrubber area to overflow. And generally, the scrubber area must be inspected for hazards—including water

overflowing from the U-drains—at least four times per day. On March 12, 2018, IP recorded only one such inspection. Viewing these facts in a light most favorable to Plaintiffs, the Court finds issues of fact as to IP's actual and constructive knowledge precluding summary judgment. *See Valentin v. Six Flags Over Ga., L.P.*, 286 Ga. App. 508, 512 (2007) ("Where an obstruction is in some way hidden, camouflaged or intrinsically unsafe, the question of ordinary care in inspecting the premises should be one for the jury.").

### 2. Michael Giusto's knowledge of the hazard

Even if there are issues of fact as to its knowledge of the hazard, avers IP, summary judgment is nonetheless appropriate because Michael Giusto had equal or superior knowledge. According to Georgia law, "a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant." *Travis v. Quiktrip Corp.*, 339 Ga. App. 551, 553 (2016). But here, the evidence is not so "plain, palpable, and undisputable" as to warrant summary judgment. Instead, the parties submit conflicting evidence on which or who had the greater knowledge.

For example, IP posits that Michael Giusto: (1) should have clearly seen the overflown water; (2) possessed 25 years of experience working at the Mill; and (3) based on his training and IP's policies, should have generally been aware of the

risks associated with walking through the water in the scrubber area. But this argument does not concern the specific hazard at issue here; *i.e.*, the hose allegedly submerged in the overflown water. It is well settled that "it is the plaintiff's knowledge of the specific hazard which caused the fall that determines whether the plaintiff can prevail on a premises liability claim, not merely the plaintiff's knowledge of generally prevailing hazardous conditions or of other hazardous conditions in the area which plaintiff observes and avoids." *Ward*, 281 Ga. App. at 879. Plaintiffs, conversely, submit evidence that raises genuine issues of fact. For example, Plaintiffs point to testimony that IP's employees previously observed overflowing water in the scrubber area and hoses laid across the floor on different occasions. In sum, the question of superior knowledge should be reserved for the factfinder. Summary judgment on this issue is therefore inappropriate.

### 3.   Assumption of the risk

In a somewhat similar vein, IP argues it is entitled to summary judgment for the additional reason that, as a matter of law, Michael Giusto assumed the risk of his injury. The assumption of the risk doctrine is an affirmative defense to a premises liability claim. *Sones v. Real Est. Dev. Grp., Inc.*, 270 Ga. App. 507, 508 (2004). The doctrine only applies "if it is established that he without coercion of circumstances, chooses a course of action with full knowledge of its danger and

while exercising a free choice as to whether to engage in the act or not." *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1996). A defendant asserting this defense "must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Id*. In line with the general premises liability standard, "whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence." *Watson v. Reg'l First Care, Inc.*, 335 Ga. App. 740, 741 (2016).

According to IP, Michael Giusto must have seen the water overflowing from the floor U-drains and, by choosing to walk through it, he assumed the risk of injury. Construing the record and all reasonable inferences in Plaintiffs' favor, the evidence does not conclusively establish the requisite elements of the assumption of the risk doctrine as a matter of law. Regarding Michael Giusto's knowledge, even assuming he saw the water, IP points to no evidence that he saw or knew of the submerged hose. *Vaughn*, 266 Ga. at 864 ("Knowledge of the risk . . . means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately

causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities.") (emphasis in original).

This distinction is also relevant to the second and third elements. Specifically, Plaintiffs point to testimony from the maintenance manager of the Utilities Unit that he previously walked through standing water in the scrubber area without concern.[27] At bottom, the "plain, palpable and undisputed evidence" does not support a finding that, by deciding to walk through inches-high water, Michael Giusto assumed the risk of tripping over a camouflaged hose into water that may have been at thermal temperatures or contained chemicals. *See Hillman v. Carlton Co.*, 240 Ga. App. 432, 433–34 (1999) (reversing grant of summary judgment on assumption of the risk grounds because evidence did not show plaintiff fully appreciated the specific danger of the hazard). *See also Sears, Roebuck & Co. v. Chandler*, 152 Ga. App. 427, 429 (1979) (holding, in context of whether a hazard is in plain view, "where the obstruction is in some way hidden, camouflaged, or intrinsically unsafe, the question of ordinary care [by] the plaintiff is for the jury.").

---

[27]   ECF 190-12, at 65:18–66:5.

### 4.   Michael Giusto's status in the Utilities Unit

Notwithstanding any of the above, IP argues that it is entitled to summary judgment because Michael Giusto constituted a licensee or trespasser—but not an invitee—in the scrubber area and, thus, it owed him a lower standard of care. "[T]he duty owed by a landowner to one who enters upon his property depends, to a certain extent, on whether the one entering the property is an invitee, a licensee or a trespasser." *Lipham v. Federated Dep't Stores, Inc.*, 263 Ga. 865, 865 (1994). Invitee status arises when "an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purposes." O.C.G.A. § 51-3-1. Conversely, a licensee is an individual who:

> (1) Is neither a customer, a servant, nor a trespasser;
>
> (2) Does not stand in any contractual relation with the owner of the premises; and
>
> (3) Is permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification.

O.C.G.A. § 51-3-2. Similarly, a trespasser is an individual who "though peacefully or by mistake, wrongfully enters upon property owned or occupied by another." *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 633–34 (2008).

For an invitee, an owner owes a duty "to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. But for a licensee or

trespasser, an owner may only be liable for actions causing a willful or wanton injury. O.C.G.A. §§ 51-3-2, 51-3-3. Georgia courts distinguish between an invitee and licensee by looking to "whether the person coming onto the premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with someone other than the owner or occupier." *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 743 (2011).

An individual's status on the premises does not necessarily remain fixed or static. Rather, an invitee may subsequently become a licensee or trespasser if he or she goes beyond the part of the premises to which it reasonably appears that his or her invitation extends. *Atkins v. Tri-Cities Steel, Inc.*, 166 Ga. App. 349, 351 (1983) (citation omitted). *See also Piggly Wiggly, Macon, Inc. v. Kelsey*, 83 Ga. App. 526, 530 (1951) ("A person may be an invitee as to certain parts of premises and a licensee or trespasser as to other parts."). "When there is conflicting evidence as to the legal status of the injured party, the question is rightfully left to the jury." *Ga. Dep't of Corr. v. Couch*, 312 Ga. App. 544, 546 (2011).

It is undisputed that Michael Giusto constituted an invitee when he first entered the Mill to attend the contractor safety meeting. The issue is whether his status changed when he left that meeting and visited the Utilities Unit. IP presents

evidence that it required heightened safety procedures in the Utilities Unit and did not permit individuals to enter without express preauthorization, which Michael Giusto did not obtain. Plaintiffs, conversely, present evidence that: (1) Michael Giusto visited the Utilities Unit not for his own convenience, but to check on a Prim crew supervised by Ussery working in the area; (2) there were no signs or barricades designating the Utilities Unit as restricted and the training video relied on by IP is not dispositive; and (3) testimony from IP's employees generally stating that independent contractors commonly walk through the scrubber area without prior permission from IP. Given this conflict—and construing all evidence and reasonable inferences in Plaintiffs' favor—there are genuine issues of fact that must be resolved by the factfinder, not the Court on summary judgment. *Couch*, 312 Ga. App. at 546. *See also Card v. Dublin Constr. Co., Inc.*, 337 Ga. App. 804, 809 (2016) (finding question of whether an individual's status changed from "invitee when he first came onto the job site . . . to that of licensee or trespasser when he entered the unauthorized area of the site" without permission inappropriate for determination as a matter of law because plaintiff presented evidence that "he saw no warning tape, the building was not roped off, and other workers were entering the building, so he assumed it was permissible to enter"). IP's motion for summary judgment is denied.

## C.     Evoqua's motion for summary judgment

It is undisputed that Evoqua did not own or operate the Mill. Instead, Evoqua—as well as Prim and Michael Giusto—acted as an independent contractor. "The duty imposed upon an owner or occupier of land by O.C.G.A. § 51–3–1 is inapplicable to an independent contractor." *Maddox v. Cumberland Distrib. Servs. of Ga., Inc.*, 236 Ga. App. 170, 171 (1999) (collecting cases). *See also Ahuja v. Cumberland Mall, LLC*, 821 F. Supp. 2d 1317, 1326 (N.D. Ga. 2011).[28] This does not, however, necessarily insulate an independent contractor from liability. Under Georgia law:

> Where two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor.

*Mullinax v. Pilgrim's Pride Corp.*, 354 Ga. App. 186, 191 (2020) (quoting *Doke v. Dover Elevator Co.*, 152 Ga. App. 434, 436 (1979)).

---

[28] There is one recognized exception to this rule: "Upon the landowner's delivery of possession and control of the property to an independent contractor, the contractor then becomes the occupier of the land within the meaning of the Georgia statute." *Tisdale v. United States*, 62 F.3d 1367, 1372 (11th Cir. 1995). This exception is not relevant here; Plaintiffs do not allege or provide evidence that IP delivered full possession and control of the Mill to Evoqua.

Put another way, a "contractor or subcontractor has a duty, in prosecuting his or her work, to use ordinary care not to cause injuries to others engaged in work on the same premises." *Ragsdale Heating & Air Conditioning, Inc. v. Terrell*, 245 Ga. App. 866, 867 (2000) (quoting *Soucy v. Alexander*, 172 Ga. App. 501, 502 (1984)). But any duty is strictly limited to the scope of work the independent contractor actually performed. *Adcox Serv. Co. v. Adderhold*, 210 Ga. App. 39, 40 (1993) ("[Plaintiff's] allegations of negligence are that, merely because [the independent contractor] had knowledge of the alleged defect, it had a duty to take measures to correct the defect or warn of its danger. No such duty is placed on an independent contractor."). *See also Sheppard v. CSX Transp., Inc.*, 78 F. App'x 878, 882 (4th Cir. 2003) ("Georgia law does not create a duty for subcontractors to warn of hazards that they are aware of but did not create.").

The relevant facts underlying Evoqua's motion are largely undisputed. IP, not Evoqua, maintained sole control over the scrubber area.[29] Evoqua had no responsibility for, or involvement with, the floor U-drains.[30] On March 4, 2018, Evoqua employee Randy Cowart delivered the demineralization trailer to the

---

[29]   ECF 209, ¶ 13.

[30]   *Id*. ¶¶ 15, 32.

Mill.[31] Prior to leaving, IP required Cowart to obtain its "sign off" on the setup of the hose to the trailer.[32] According to Cowart's unrebutted testimony, he did not place the hose over the floor U-drain.[33] No Evoqua employee was present at the Mill between the time Cowart delivered the trailer and Michael Giusto fell.[34] IP retained all responsibility for the position of the hose during that period.[35] Evoqua also had no responsibility for erecting signage or barricades around the hose.[36]

Given the undisputed evidence, there are no material issues of fact that could lead a reasonable factfinder to conclude that Evoqua breached its duty of ordinary care. The only evidence pointed to by Plaintiffs is a "Slips, Trips and Falls" safety bulletin created by Evoqua that discusses potential hazards such as spills and exposed cable cords in *Evoqua's* facilities.[37] But this evidence is not relevant here. It is undisputed that Michael Giusto fell at the Mill, not at an Evoqua

---

[31]   ECF 215, ¶ 66.

[32]   ECF 209, ¶¶ 10, 29.

[33]   *Id*. ¶¶ 20–21.

[34]   *Id*. ¶ 26.

[35]   ECF 215, ¶ 27.

[36]   ECF 205-6, at 263:10-14.

[37]   ECF 208-7.

facility. And he allegedly tripped over a hose submerged under water, not an exposed cable cord. At bottom, the safety bulletin does not create a material issue of fact. Therefore, Evoqua is entitled to summary judgment.

## IV.   CONCLUSION

Evoqua's motion for summary judgment [ECF 189] is **GRANTED**; IP's motion for summary judgment [ECF 191] is **DENIED**; and IP's motion to strike or exclude [ECF 213] is **DENIED**. Plaintiffs and IP shall file their joint proposed pretrial order within 30 days of this Order.

**SO ORDERED** this the 3rd day of June 2021.

Steven D. Grimberg
United States District Court Judge