## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

NANCY GIUSTO, individually and as
surviving spouse, and NANCY GIUSTO, as
administratrix of the estate of MICHAEL
GIUSTO, deceased,

     Plaintiffs,

           v.

INTERNATIONAL PAPER COMPANY,

     Defendant.

Civil Action No.
1:19-cv-00646-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant International Paper
Company's (hereafter, IP) motion to exclude the opinions and testimony of
Plaintiffs' expert Frank Ferrell [ECF 194]; IP's motion to strike rebuttal opinions
offered by Ferrell [ECF 195]; IP's motion for the apportionment of damages
[ECF 197]; and Plaintiffs' motion to exclude the opinions and testimony of IP's
expert Zdenek Hejzlar, Ph.D. [ECF 198]. After careful review of the record, the
Court enters the following Order.[1]

---

[1]    Plaintiff's motion for oral argument on the motion to exclude Zdenek Hejzlar
[ECF 221] is **DENIED**. Defendant's motion for argument on its motion to
exclude Frank Ferrell [ECF 223] is **DENIED**.

I.      BACKGROUND

The Court incorporates by reference the facts of this case as set forth in its

June 3, 2021 Order.[2]

II.     DISCUSSION

   A.      IP's Motion to Exclude the Opinions and Testimony of Frank
           Ferrell

On February 4, 2020, Plaintiffs disclosed Frank Ferrell as an "expert in the

fields of safety, accident and injury prevention, hazard recognition and

rectification, industry standards, and the duties and responsibilities of mill owners

and operators in the paper and forest products industry."[3] Ferrell intends to offer

at least 14 separate opinions as to several issues of liability, such as the

reasonableness of IP's and Michael Giusto's actions on the day of the accident.[4] On

October 6, 2020, IP filed its motion to exclude Ferrell's opinions and testimony.[5]

On October 20, Plaintiffs filed a response in opposition.[6] IP filed its reply on

November 13.[7]

---

[2]   ECF 240.

[3]   ECF 117, at 1-2.

[4]   *See generally* ECF 117-1 (Ferrell Expert Report).

[5]   ECF 194.

[6]   ECF 199.

[7]   ECF 218.

1.    **Legal Standard**

Federal Rule of Evidence 702 governs the admissibility of expert witness

evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires "district courts to perform a 'gatekeeping' role concerning

the admissibility of expert testimony." *Seamon v. Remington Arms Co., LLC*, 813 F.3d

983, 988 (11th Cir. 2016) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

597 (1993)). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding

*Daubert's* "gatekeeping obligation" applies to all types of expert testimony

described in Rule 702). The Court's role is "to ensure that speculative, unreliable

expert testimony does not reach the jury under the mantle of reliability that

accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d

1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). But the Court must remain mindful to not "supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596).

The Eleventh Circuit applies a three-part inquiry to adjudicate a *Daubert* challenge:

> (1) whether the expert witness is qualified to testify competently regarding the matters he intends to address;
>
> (2) whether the methodology by which the expert witness reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of the expert testimony shoulders the burden of establishing each element. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

2.      **Analysis**

According to IP, Ferrell should not be permitted to testify because his opinions: (1) are not reliable, (2) would not be helpful to the trier of fact, and (3) lack a factual foundation.

*i.*      **The Reliability of Ferrell's Opinions**

IP argues Ferrell's opinions are not reliable because they constitute unsubstantiated conclusions devoid of a meaningful methodology. Plaintiffs, conversely, contend Ferrell's opinions are reliable because they are based on his review of the evidence and years of work experience.

Rule 702 permits a witness to be qualified as an expert based on his or her experience in the relevant field. Fed. R. Evid. 702. *See also Frazier*, 387 F.3d at 1260–61 ("While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."). According to the Advisory Committee Notes, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note (2000 amends.). *See also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("[T]here is no question that an expert may still properly base his testimony on professional study or personal experience.").

But the "unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original). To the contrary, "while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The proposed expert must still articulate a basis for the proffered opinions; *i.e.*, "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (2000 amends.). What a proponent cannot do is establish admissibility "merely by the *ipse dixit* of an admittedly qualified expert." *Frazier*, 387 F.3d at 1261. *See also Kumho*, 526 U.S. at 157 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Daubert*, 509 U.S. at 590 ("Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."); *Frazier*, 387 F.3d at 1261 ("[T]he gatekeeping role requires a district court to make a reliability inquiry . . . the

expert's bald assurance of validity is not enough.") (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand)).

Plaintiffs have offered Ferrell as an expert based solely on his experience. A review of Ferrell's report and *curriculum vitae* demonstrates that he is eminently qualified to opine on certain industry standards relevant to this case. For example, Ferrell possesses 38 years of first-hand experience implementing, managing, and operating safety policies and procedures at large-scale paper and pulp mills for Georgia-Pacific, LLC. Ferrell's experience covers the entire spectrum, ranging from performing more routine day-to-day operations as a laborer to the effectuation of global safety programs as a manager and executive.

As acknowledged by IP, Ferrell's qualifications are not the crux of its motion. Rather, IP contends his opinions are not *reliable* because Ferrell simply falls back on his extensive work experience to offer unsubstantiated conclusions based on the facts without articulating a sufficient basis for his reasoning. As recently reaffirmed by the Eleventh Circuit:

> Qualifications and reliability remain separate prongs of the *Daubert* inquiry that answer two separate questions. A witness is *qualified* as an expert if he is the type of person who should be testifying on the matter at hand. An expert opinion is *reliable* if it was arrived at through, among other things, a scientifically valid methodology.

*Moore*, 995 F.3d at 852 (emphasis in original). For the reliability prong, courts

generally consider:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

*Seamon*, 813 F.3d at 988 (quoting *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir.

2004)). But the "[s]tandards of scientific reliability, such as testability and peer

review, do not apply to all forms of expert testimony." *Am. Gen. Life Ins. Co. v.*

*Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho*, 526 U.S. at

151). As explained by the Eleventh Circuit:

> For nonscientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. A district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience.

*Schoenthal*, 555 F.3d at 1338 (citations omitted).

Under this framework, the Court finds Ferrell's opinions reliable. His report

indicates that he reviewed the substantial universe of discovery in this case and

formed his conclusions by applying relevant industry standards gleaned from his

years of experience in a niche area. The Eleventh Circuit has condoned the

admissibility of similar expert testimony as to key industry standards. *See Schoenthal*, 555 F.3d at 1338 ("The district court did not abuse its discretion when it determined that [the expert's] education and experience qualified him to testify as an expert about insurance industry standards."). IP cites *Federal Trade Commission v. National Urological Group, Inc.* for the general proposition that "one may be considered an expert but still offer unreliable testimony." No. 1:04-cv-3294-CAP, 2017 WL 6759868, at *42 (N.D. Ga. Oct. 10, 2017) (quoting *Quiet Tech*, 326 F.3d at 1342). *See also Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2016) ("Accepting [proffered expert's] experience alone as evidence of the reliability of his statements is tantamount to disregarding entirely the reliability prong of the *Daubert* analysis."). But those cases are factually distinguishable. Ferrell sufficiently supports his conclusions through citations to relevant evidence and industry standards. This is persuasive indicia of reliability sufficient to pass muster under *Daubert*.

### ii. Whether Ferrell's Opinions Would Be Helpful to the Trier of Fact

IP next argues Ferrell's opinions should be limited because some of them would not be helpful to the trier of fact. To be admissible, an expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The touchstone of this inquiry is the concept of relevance."

*Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Daubert*, 509 U.S. at 591). *See also Allison*, 184 F.3d at 1312 (stating proposed expert testimony must "logically advance[ ] a material aspect of the proposing party's case"). The testimony must "concern matters that are beyond the understanding of the average lay person"; for example, testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Prosper*, 989 F.3d at 1249 (quoting *Frazier*, 387 F.3d at 1262–63).

The Court agrees that several of Ferrell's opinions are recharacterizations of evidence or inferences derived from facts in the record. For example, Ferrell opines that "[o]n and before March 12, 2018, International Paper conduced processes and operations at the Flint River Mill that at times overwhelmed the capacity of the u-drains in the utilities area."[8] Later, Ferrell states that "[p]rior to March 12, 2018, International Paper and Evoqua were aware that the u-drains in the area of the fall were prone to overflowing but nonetheless placed a 2-inch diameter hose across the u-drains in the area in which pedestrians were known to walk."[9] These subjective portrayals of factual information would not assist the jury. They concern matters within the understanding of an average citizen. Moreover, the

---

[8]   ECF 117-1, at 8 (Opinion 1).

[9]   *Id*. at 9 (Opinion 7).

jury members can draw their own conclusions from the facts and inferences in the record. *See Abramson v. Walt Disney World Co.*, 370 F. Supp. 2d 1221, 1225 (M.D. Fla. 2005) ("This circuit follows the generally accepted rule that expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.") (collecting cases).

Given Ferrell's qualifications and expert status, there is a greater risk of prejudice to IP, as a jury may naturally afford his rendition of the facts heightened weight. *See, e.g., Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 579 (N.D. Fla. 2009) ("When the trier of fact is entirely capable of determining issues in the case without any technical assistance from . . . experts, expert testimony is unhelpful and must be excluded from the evidence. Otherwise, there is a risk the trier of fact will give the expert testimony undue weight on account of its special status.") (citation and punctuation omitted). At bottom, Ferrell may not articulate his view of the facts dressed up as expert testimony.

IP requests that the Court preclude Ferrell from rendering opinions 1-4 and 7-14 on this basis. Some of Ferrell's opinions—such as number one—consist solely of his characterization of the facts. As such, he is excluded from rendering that specific opinion. He is also excluded from rendering opinions 2 and 3 on this basis.

However, other of Ferrell's opinions—such as number five—are a mixture of his characterization of the facts and opinions that experts may legitimately offer. For instance, Ferrell will be allowed to opine as to the relevant standard of care, such as those expressed in parts of opinions 5, 6, 9, 10, and 11. Ferrell may also testify as to opinion 14, since "[a]n expert may testify as to his opinion on an ultimate issue of fact. An expert may not, however, merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citing Fed. R. Evid. 704). Moreover, an expert "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. . . . An expert does not invade the court's authority by discoursing broadly over the entire range of the applicable law where the opinion is focused on a specific question of fact." *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014) (citing *Specht v. Jensen,* 853 F.2d 805, 809–10 (10th Cir. 1988) (en banc)) (cleaned up). Thus, Ferrell's discussions of various regulations in conjunction with his opinions about industry standards are admissible. *See, e.g.*, opinions 9, 10, and 11.

The Court grants IP's motion to the extent it seeks to exclude Ferrell's opinions that will not be helpful to the trier of fact as explained above, and cautions Plaintiffs that Ferrell may not give his opinions as to how the underlying facts of this case transpired. It is Plaintiffs' responsibility in the first instance to offer only

those portions of Ferrell's opinions that are consistent with *Daubert*. To the extent the opinions expressed by Ferrell are not specifically addressed in this Order, IP may raise this objection at trial at the time the testimony is offered.

### iii.    Whether Ferrell's Opinions Are Supported by an Adequate Factual Foundation

As a final catch-all argument, IP contends Ferrell's opinions lack a proper evidentiary foundation. An expert's opinions must be supported by a sufficient factual basis. *Cook*, 402 F.3d at 1111. *See also Frazier*, 387 F.3d at 1260 (stating that *Daubert* "inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702"). Like all aspects of the *Daubert* inquiry, the proponent bears the "burden of laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison*, 184 F.3d at 1306.

IP first avers that some of Ferrell's opinions are his version of facts and inferences that a reasonable jury may—or may not—find for themselves. As stated above, the Court agrees; Ferrell's testimony shall be limited on this basis. Next, IP argues Ferrell relies on inadmissible evidence to form his opinions. The Court addressed certain categories of this evidence in the June 3, 2021 Order. As noted there, some or all of this evidence may—or may not—ultimately be admissible.

For purposes of this Order, Rule 703 is on point: "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." The very facts underlying this case fall within the purview of this rule. Whether these facts are ultimately presented to the jury under Rule 703 is an issue better resolved closer to trial.[10] In sum, IP's motion to exclude is **GRANTED IN PART** and **DENIED IN PART**.

### B. Plaintiffs' Motion to Exclude the Opinions and Testimony of Dr. Zdenek Hejzlar

On April 15, 2020, IP disclosed Dr. Hejzlar as an "expert in occupational health and safety, human factors, and risk assessment."[11] Dr. Hejzlar intends to offer at least 14 specific opinions on various facets of liability.[12] On October 9, Plaintiffs lodged a *Daubert* challenge to Dr. Hejzlar's opinions and testimony.[13] IP filed a response in opposition on October 23.[14] Plaintiffs filed a reply on November

---

[10]   Fed. R. Evid. 703 ("[I]f the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

[11]   ECF 149, at 2.

[12]   ECF 149-1, at 26–27 (Hejzlar Expert Report).

[13]   ECF 198.

[14]   ECF 203.

16.[15] Plaintiffs raise three primary arguments: that Dr. Hejzlar (1) is not qualified to offer opinions about safety procedures in paper mills, (2) bases his opinions on insufficient facts and data, and (3) proffers opinions that would not be helpful to the trier of fact.

### 1.    Dr. Hejzlar's Qualifications

To reiterate, although overlapping in their basic requirements the qualification and reliability prongs of the *Daubert* test "remain distinct concepts and the courts must take care not to conflate them." *Moore*, 995 F.3d at 851 (quoting *Frazier*, 387 F.3d at 1260). As to qualifications, "expert status may be based on knowledge, skill, experience, training, or education." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702). As a general matter, "Rule 702 takes a liberal approach to expert witness qualification." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006).

Plaintiffs argue Dr. Hejzlar is not qualified because he lacks experience dealing with safety procedures in paper or pulping mills. Dr. Hejzlar possesses a Ph.D. in occupational safety and health engineering.[16] He has 28 years of

---

[15]   ECF 220.

[16]   ECF 149-1, at 34.

experience working in the premises and occupational safety fields.[17] He also directs projects in human factors systems involving occupational safety and health hazards in industrial settings.[18] Although Plaintiffs are correct that Dr. Hejzlar's credentials do not contain a specialized background in paper or pulping mills, the Court disagrees that this renders him unqualified.

Rule 702 and *Daubert* mandate that the subject matter of the witness's testimony match his or her area of proficiency. *See, e.g., Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1376 (M.D. Ga. 2007). But an "expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008). *See also Maiz*, 253 F.3d at 665 (rejecting argument that proffered expert was unqualified because he lacked experience in specific field of real estate development). As summarized by one district court, "a witness qualified as an expert in one subject may not offer expert testimony on another subject," but "[g]eneral knowledge in a field . . . is normally sufficient to qualify a witness as an expert in that field's specialties as well." *Goforth v. Paris*, No. CIVA 5:02-cv-94 HL, 2007 WL 988733, at *3 (M.D. Ga. Mar. 30, 2007). *See also Trilink*, 583 F. Supp. 2d at

---

17   *Id.*

18   *Id.*

1304 ("[I]f there are gaps in an expert witness's qualifications or knowledge, they generally go to the weight of the witness's testimony not its admissibility." (punctuation omitted).

Given Dr. Hejzlar's education and experience, the Court finds him qualified to opine on issues of health and safety procedures in industrial settings. Dr. Hejzlar's proffered opinions are within the confines of his competency. Requiring Dr. Hejzlar to possess specialized paper-and-pulping-mill experience as a *per se* rule would eliminate *Daubert's* "flexible and case specific" inquiry—*Adams v. Laboratory Corp. of America*, 760 F.3d 1322, 1331 n.13 (11th Cir. 2014)—and impermissibly "set a burden that is much too high." *Moore*, 995 F.3d at 854. Plaintiffs may probe Dr. Hejzlar's lack of experience in paper and pulping mills during cross examination. In sum, the Court finds that Dr. Hejzlar is sufficiently qualified.

### 2.     The Reliability of Dr. Hejzlar's Opinions

Plaintiffs' next argument is that Dr. Hejzlar's opinions are not reliable. According to Plaintiffs, certain of Dr. Hejzlar's opinions should be excluded because they (1) purportedly contradict deposition testimony from certain of IP's employees or (2) are not based on his personal knowledge.

Plaintiffs' first argument is unpersuasive. Courts in this district routinely find that any conflict between an expert's proffered testimony and the underlying evidence or facts goes to the weight—not admissibility—of the testimony. *E.g., Cameron v. Teeberry Logistics, LLC*, No. 3:12-cv-181-TCB, 2013 WL 7874709, at *4 (N.D. Ga. May 21, 2013); *Mims v. Wright Med. Tech., Inc.*, No. 1:11-cv-213-TWT, 2012 WL 12835870, at *2 (N.D. Ga. May 11, 2012); *Souder v. Floyd Cnty., Ga.*, No. CIV.A. 4:03-cv-0085-HLM, 2005 WL 6218033, at *6 (N.D. Ga. Mar. 22, 2005). The Court agrees with this principle. The asserted inconsistencies here do not present a proper basis for exclusion.

Regarding Plaintiffs' second argument, "relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). Accordingly, an expert cannot speculate as to an individual's state of mind. *See Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (affirming district court's decision to strike expert testimony that "contain[ed] legal conclusions as to another person's state of mind"); *United States ex rel. Raven v. Ga. Cancer Specialists I, P.C.*, No. 1:11-cv-00994-CAP, 2018 WL 11220441, at *4 (N.D. Ga. July 3, 2018) (excluding parties from "offering any state of mind testimony via either expert at trial"); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp.

3d 1307, 1326 (M.D. Fla. 2015) (excluding expert testimony that offered opinions on party's "intent, state of mind, or motivations").

In opinion 6, Dr. Hejzlar posits:

> On March 12, 2018, the information and warnings provided by IP did not influence the decisions of Mr. Giusto, who did not act in a manner consistent with his training and experience that day. Mr. Giusto, for unknown reasons, violated those rules, and his violations caused him to be present and get injured in a restricted operations area of the Powerhouse, where he was not authorized to be working on the day of his incident.[19]

This opinion offers speculation as to Michael Giusto's state of mind prior to his fall. This is an issue reserved for the jury's determination based on its view of the facts and inferences in the record. Accordingly, Dr. Hejzlar may not offer this opinion.

### 3.    Whether Dr. Hejzlar's Opinions Would Be Helpful to the Trier of Fact

Plaintiffs' final argument is that certain of Dr. Hejzlar's opinions are outside the scope of admissible expert testimony and, therefore, would not assist the trier of fact. As stated above, expert testimony is unnecessary—and potentially prejudicial—if it is simply a recasting of record facts and evidence that an average

---

[19]    ECF 149-1, at 26.

person may understand. *E.g.*, *Prosper*, 989 F.3d at 1249; *Frazier*, 387 F.3d at 1262–63; *Abramson*, 370 F. Supp. 2d at 1225; *Hendrix*, 255 F.R.D. at 579. Several of Dr. Hejzlar's opinions fall into this category. For example, Dr. Hejzlar opines that "[t]he path that [Michael Giusto] took from his truck was not a shortcut to the Powerhouse elevator."[20] He also posits that "[t]he 'hazardous liquid' that was allegedly present on the day of the incident would have been obvious to anyone who encountered it."[21] These subjective characterizations concern matters easily discernable by the jury and offer nothing more than what legal counsel may argue at trial. Therefore, Dr. Hejzlar may not testify as to opinions 4, 8, 9, 10, 11, 12, 13, and 14 in his report. In sum, Plaintiffs' motion to exclude is **GRANTED IN PART** and **DENIED IN PART**.

### C.    IP's Motion to Strike Frank Ferrell's Rebuttal Opinions

Plaintiffs have also offered Frank Ferrell as an expert to rebut Dr. Hejzlar's opinions. Ferrell offers seven rebuttal opinions.[22] On October 6, IP filed its motion to strike Ferrell's rebuttal opinions.[23] Plaintiffs filed a response in opposition on

---

[20]   *Id*. at 27.

[21]   *Id*.

[22]   ECF 177-1, at 4-9 (Ferrell Rebuttal Report).

[23]   ECF 195.

October 20.[24] IP filed its reply on November 13.[25] IP contends Ferrell's rebuttal expert report should be stricken because it purportedly (1) contains new information not responsive to Dr. Hejzlar's report and (2) was untimely filed.

Rule 26(a)(2)(D)(ii) permits a party to file a rebuttal expert report "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). Although the Federal Rules of Civil Procedure and Eleventh Circuit have not defined or clarified "the term same subject matter, [ ] other courts have construed it broadly." *Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-784-ODE, 2019 WL 5448206, at *22 (N.D. Ga. Oct. 3, 2019) (punctuation omitted). *But see Plantation Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. 1:09-cv-1260-SCJ, 2011 WL 13143562, at *2 (N.D. Ga. Nov. 10, 2011) ("There appears to be an absence of direct, binding authority on how to properly interpret the rebuttal language of Federal Rule of Civil Procedure 26. Various courts have interpreted the language broadly, while other courts have interpreted the language narrowly."). The Court is permitted to "exercise [its] discretion and judgment in determining if a rebuttal expert report addresses the

---

24   ECF 200.

25   ECF 219.

same subject matter as the opposing party's initial expert report." *ITT Corp. v. Xylem Grp., LLC*, No. 1:11-cv-3669-WSD, 2012 WL 12871632, at *3 (N.D. Ga. Oct. 15, 2012) (collecting cases). However, a party's ability to "submit a rebuttal expert report is not license to expand its case-in-chief," as a "[r]ebuttal is for the purpose of contradicting an opinion." *Gaddy v. Terex Corp.*, No. 1:14-cv-1928-WSD, 2017 WL 3276684, at *3 (N.D. Ga. Aug. 2, 2017). Put another way:

> Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report. They are not, however, the proper place for presenting new arguments. If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one. Rather, rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case.

*Reese v. CSX Transp., Inc.*, No. CV 118-215, 2020 WL 5740253, at *12 (S.D. Ga. Sept. 24, 2020).

In *ITT Corporation v. Xylem Group, LLC*, the district court denied a motion to strike a rebuttal expert report, even though its opinions and conclusions were "similar, but [contained] nuanced differences" that addressed the "subject matter . . . in different ways." 2012 WL 12871632, at *5. Specifically, the court found persuasive that "[t]his is not a case where the rebuttal reports are not offered to rebut the subject matter of the expert opinions offered by Plaintiffs and it is not an

attempt by Defendant to present new legal theories or better experts than those it identified initially." *Id.*

As Plaintiffs acknowledge, Ferrell's rebuttal report offers new opinions not raised in either his initial report or Dr. Hejzlar's report. For example, in his rebuttal report, Ferrell states that "IP failed to properly mark pipes and tanks in the utilities area, in direct violation of accepted industry standards."[26] This is the first reference to marking pipes and tanks. However, this opinion touches on the same subject matter as the two prior reports; *i.e.*, the adequacy and reasonableness of IP's safety procedures. One of Dr. Hejzlar's key opinions is that "[t]he Flint River Mill's Safety and Health Program properly mitigated the hazards inherent at a pulp mill through industry-recognized controls."[27] Ferrell's opinions fit within the contours of Dr. Hejzlar's assessment as to constitute a proper rebuttal. Additionally, over five months after Ferrell filed his initial report, the Court specifically ordered IP to permit Plaintiffs a second inspection of the Mill for the purpose of observing areas discussed by Dr. Hejzlar's report for which Plaintiffs did not originally have

---

[26]   ECF 177, at 5.

[27]   ECF 149-1, at 27.

access.[28] Like *ITT Corporation*, the Court finds Ferrell's rebuttal opinions appropriate under the circumstances.

IP next argues Ferrell's rebuttal report was untimely. In its April 23, 2020 Amended Scheduling Order, the Court set the deadline for rebuttal expert reports as August 11, 2020.[29] Plaintiffs timely filed Ferrell's rebuttal report on that date. Notwithstanding, IP advances a timeliness argument on the theory that Ferrell's rebuttal opinion is not actually a rebuttal opinion, but a new assessment of substantive facts. As stated above, the Court disagrees. Thus, Plaintiffs timely filed Ferrell's rebuttal report. IP's motion to strike is **DENIED**.[30]

## III.   CONCLUSION

IP's motion to exclude the opinions and testimony of Frank Ferrell [ECF 194] is **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' motion to exclude the opinions and testimony of Dr. Hejzlar [ECF 198] is **GRANTED IN PART** and **DENIED IN PART**; IP's motion to strike Ferrell's rebuttal opinions [ECF 195] is

---

[28]   ECF 169.

[29]   ECF 151.

[30]   IP also argues some of Ferrell's rebuttal opinions are largely duplicative of his initial opinions. Even if the rebuttal opinions touch on the same issues, the Court concludes that this is not a persuasive reason to wholesale exclude certain opinions in the rebuttal report.

**DENIED**; and the parties' motions for oral argument on their respective motions to exclude [ECF 221, 223] are **DENIED**.

**SO ORDERED** this the 13th day of August 2021.

Steven D. Grimberg
United States District Court Judge