**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

NANCY GIUSTO, individually and as
surviving spouse, and NANCY GIUSTO, as
Administratrix of The Estate of MICHAEL
GIUSTO, deceased,

      Plaintiffs,

              v.

INTERNATIONAL PAPER COMPANY,
    Defendant.

Civil Action No.
1:19-cv-00646-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant's motion in limine [ECF 280];

Plaintiffs' motion to exclude expert testimony [ECF 246]; Defendant's motion to

limit expert testimony [ECF 243]; Defendant's objection to Plaintiffs' supplemental

expert affidavit [ECF 251]; and Plaintiffs' oral renewed motion opposing

Defendant's Notice for Apportionment [ECF 197], motion to strike [ECF 261], and

motion in limine [ECF 278, Mot. 3] relating to Defendant's apportionment defense.

After careful review and evaluation of the record and the parties' arguments, the

Court enters the following Order.

I.      **Background**

The Court incorporates by reference the facts of this case as set forth in its June 3, 2021 Order.[1] On August 13, the Court ruled on IP's motion to exclude the opinions and testimony of Plaintiffs' expert Frank Ferrell, Plaintiffs' motion to exclude the opinions and testimony of IP's expert Zdenek Hejzlar, Ph.D, and various other motions.[2] After that, the parties filed a flurry of motions, including several motions in limine. On November 17, the Court heard oral argument on these motions[3] and resolved many of them via bench rulings and a docket entry on Thursday, November 18. At that time, the Court took under advisement IP's motion in limine regarding the admissibility of various OSHA documents and the parties' motions to exclude certain expert testimony.[4] The Court also deferred ruling on Plaintiffs' motion in limine, oral renewed motion, and motion to strike relating to IP's apportionment defense, until IP's November 22 deadline to file optional supplemental briefing addressing a recent Supreme Court of Georgia

---

[1]     ECF 240.

[2]     ECF 255.

[3]     ECF 197, 243, 245–46, 263, 265, 277–78, 280.

[4]     ECF 243, 246, 280.

opinion on single-defendant apportionment.[5] Now, the Court rules on those motions.

## II.   Discussion

### A.   IP's Motion in Limine to Exclude Documents from OSHA Investigation

On October 18, IP filed a separate motion in limine[6] to address Plaintiff's Exhibits 69–71 (the OSHA Documents), documents emanating from the Occupational Safety and Health Administration's (OSHA) investigation of Mr. Giusto's injury, and the facts and events surrounding it. Plaintiffs opposed that motion in a November 1 brief,[7] and IP responded on November 8.[8]

Relevant to the contested OSHA Documents, the following facts are undisputed. On March 12, 2018, Michael Giusto, the decedent, fell at the Flint River Mill (the Mill) and sustained injuries at least consistent with thermal burns. He ultimately died on March 25, 2018. On March 26, the day after Mr. Giusto died and two weeks after his fall, an unknown OSHA investigator inspected the Mill.[9]

---

[5]   ECF 261 (Pls.' Mot. to Strike); 278 (Pls.' Omnibus Mot. in Lim. No. 3); 294.

[6]   ECF 280.

[7]   ECF 284.

[8]   ECF 286.

[9]   ECF 206-2, at 22.

Weeks later on May 1, 2018, following reassignment of the investigation for reasons unknown to the parties, a new, also unidentified OSHA investigator assumed control of the investigation.[10] Nobody witnessed Mr. Giusto's fall.[11] And because Mr. Giusto died before the investigation began, neither unidentified OSHA investigator could have spoken to him. OSHA issued two citations as part of its investigation of IP, and IP and OSHA agreed to settle without any admission of fault[12]—IP paid the penalty for one citation, and OSHA dropped the other citation.[13] Plaintiffs seek to admit at trial Plaintiffs' Exhibits 69–71, the OSHA Documents, which contain findings from that investigation.

In its motion in limine and during the pretrial conference, IP provided a helpful framework for analyzing the OSHA Documents, which the Court adopts for purposes of this Order. The OSHA Documents include:

- Plaintiffs' Exhibits 69 and 70, which each include two items—

  1. The "Violation Worksheets," which comprise the first two pages of Exhibits 69 and 70 and include OSHA's proposed citations to IP for violation of 29 C.F.R.

---

[10]   *Id.*

[11]   *Id.* at 22, 121, 238.

[12]   ECF 206-2, at 224 ("None of the foregoing agreements and statements is intended as an admission by [IP] of the allegations contained within the Citation and Notification of Penalty, as amended.").

[13]   *Id.* at 222.

§ 1910.22(a)(3) and 29 C.F.R. § 1910.22(a)(d)(2)[14] and violation descriptions that comprise the alleged conduct constituting the offense; and

2. The "Instance Descriptions," which are essentially the same in both Exhibits, and which include:

   a) Information from witnesses who may or will testify at trial; and

   b) Information from witnesses whose identities are unknown to the parties; and

- Plaintiffs' Exhibit 71, a memorialization of statements from Ervin Chase (the Chase Interview).

## 1.      Legal Standard

With this framework for evaluating the OSHA Documents in mind, the Court next acknowledges that the parties agree on at least one more thing: the Court should decide the admissibility of the OSHA Documents after careful consideration and application of Fed. R. Evid. 803(8) and two cases—*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) and *Crawford v. ITW Food Equipment Group, LLC*, 977 F.3d 1331, 1337 (11th Cir. 2020)—and their progeny.

Rule 803(8) contains a hearsay exception for public records. According to that rule:

---

[14]   ECF 206-2, at 241.

> A record or statement of a public office is admissible if: (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

The parties do not dispute that Rule 803(8)(A) controls, and this Circuit's law directs that an OSHA investigative report may be "properly admitted under the public records exception to the general bar on hearsay." *Crawford*, 977 F.3d at 1348 ("OSHA reports fall squarely within the public records exception for 'factual findings from a legally authorized investigation.'") (quoting Fed. R. Evid. 803(c)). Instead, the parties dispute the trustworthiness of the OSHA Documents. To determine the trustworthiness of an OSHA report, courts must "look at a nonexhaustive list including: the timeliness of the investigation, the investigator's skill/experience, whether a hearing was held, and possible bias." *Id*. at 1343 (citing *Beech Aircraft*, 488 U.S. at 167 n.11). "[T]he burden of demonstrating a lack of trustworthiness is on the party opposing admission." *Crawford*, 977 F.3d at 1347 (citation omitted).

But that is only one step in the 803(8) analysis; the Eleventh Circuit also counsels that a district court should consider whether the OSHA materials contain factual or legal conclusions and whether they should be excluded under any other rule of evidence, including Fed. R. Evid. 403. *Hines*, 886 F.2d at 303–04 (interpreting *Beech Aircraft*).

### 2.   Analysis

Regarding the trustworthiness of the OSHA Documents, the parties disagree on four broad points, to which all arguments they make are related. IP argues that the OSHA Documents are untrustworthy because: (1) they contain inadmissible legal conclusions; (2) the OSHA investigators lacked personal knowledge of the underlying issues since they reported only a "mere collection of statements from" individuals who themselves did not witness Mr. Giusto's fall; (3) IP had no opportunity to cross-examine the investigator at a hearing, the investigators' skill and experience are unknown, and the OSHA Documents are a "chaotic mess . . . without any indication of what they are or who prepared them"; and (4) *Crawford* is factually distinguishable.[15]

---

[15] ECF 280-1, at 6–18. IP also argues that the investigation documents lack the finality required to be trustworthy and should be excluded under Fed. R. Civ. P. 408 as informal settlement documents [*Id.* at 14–15, 23–24], but these arguments are unpersuasive. IP offers no case in support of either point that

Plaintiffs respond that the OSHA Documents—particularly the Violation Worksheets—contain factual findings, not legal conclusions; the OSHA investigation was comprehensive and is reliable; the lack of opportunity to cross-examine the OSHA investigators is not dispositive as to trustworthiness; any qualm about the unidentified OSHA investigators' skill or experience is speculative; and *Crawford*—as well as this Court's previous holding on summary judgment[16]—mandate admission.[17]

i.      **Factual Statements or Legal Conclusions**

The parties dispute the extent to which certain items in the OSHA Documents are inadmissible legal conclusions. Because the Eleventh Circuit recognizes that the "amorphous line between 'factual' and 'legal' conclusions may obscure a practical analysis under this rubric," *Hines*, 886 F.2d at 303, and finding that the standard trustworthiness analysis and Rule 403 provides sufficient basis for deciding the admissibility of the OSHA Documents, the Court dispenses with any analysis of what sorts of conclusions these OSHA records contain. As outlined below, IP has met its burden to exclude the OSHA Documents as lacking the

---

binds this Court. In any event, the Court finds that IP has met its burden to exclude the OSHA Documents on other grounds.

[16]   ECF 240.

[17]   ECF 284, at 5–20.

requisite trustworthiness under Rules 803(8) and 403 without a line-by-line analysis, and the fact that such an analysis would otherwise be necessary counsels against their admission at trial.

## ii.   **Hearsay**

The OSHA investigators relied on others' accounts of what happened the day Mr. Giusto fell at the Mill. No party asserts that anyone witnessed his fall or that the OSHA investigators spoke to Mr. Giusto about the accident. Put differently, the OSHA investigators only could have learned about how Mr. Giusto fell from somebody's retelling of it. Plaintiffs concede that the OSHA investigators relied on statements from IP employees and statements from other unknown and unidentified individuals. This kind of "double hearsay," which the district court panned in *Crawford*, is inadmissible without an additional exception. 977 F.3d 1331, 1348 (citing Fed. R. Evid. 805, which mandates that if a statement contains multiple levels of hearsay, each level must satisfy an exception to the hearsay rule). In actuality the OSHA Documents contain *triple* hearsay: hearsay (*i.e.*, Giusto's statements) within hearsay (*i.e.*, interviewees' statements recounting Mr. Giusto's statements) within hearsay (*i.e.*, OSHA's report memorializing the interviewees' statements). The multiple levels of hearsay within the OSHA Documents will be discussed in greater detail below.

###### iii.   **Trustworthiness**

As Plaintiffs correctly point out, the lack of opportunity to cross-examine the OSHA investigators and the disorganized form of the OSHA investigative file are not dispositive as to trustworthiness. However, "[w]hile the inability to cross-examine the investigator cannot per se invalidate the report since Rule 803(8) does not depend on the availability of the declarant, it is nonetheless a proper factor to take into consideration when deciding trustworthiness." *Hines*, 886 F.2d at 303–04 (citing *Wilson v. Attaway,* 757 F.2d 1227, 1245 (11th Cir. 1985) (finding no abuse of discretion where the district court declined to admit a Department of Commerce Community Relations Service report under Rule 803(8) and made a "deliberate and advised determination" pursuant to Rule 403 for a variety of reasons, including the failure to afford any possibility of cross-examination)). The policy outlined in *Crawford*—that "[b]road admissibility of public records . . . is premised on 'the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record'"—is not as robust where, as in this case, there are multiple public officials at work, and none were or will be cross-examined at any stage in the litigation. *Crawford*, 977 F.3d at 1349 (quoting *Rainey v. Beech Aircraft Corp.*, 827 F.2d 1498 (11th Cir. 1987) (Tjoflat, J., dissenting), *aff'd in part, rev'd in part*, 488 U.S. 153). In this instance, IP

speculates to some degree that certain of the *Beech Aircraft* factors were not met—*i.e.*, those relating to the investigators' skill, experience, and bias. Plaintiffs speculate that the same factors were met. But the Court is concerned only that the jury will be left to speculate as the parties do, so it cannot say that the OSHA Documents are trustworthy enough to survive the Court's application of Rule 403.

### iv. *Crawford* is distinguishable.

The Court finds *Crawford* distinguishable from the factual circumstances here. In that case, the Eleventh Circuit affirmed the district court's exercise of its discretion to admit an OSHA report pursuant to Rule 803(8) and over the defendant's Rule 403 objection. 977 F.3d at 1350–51 ("[W]e cannot conclude that the district court committed reversible error in admitting the OSHA reports and rejecting [the defendant's] hearsay objection"; "We conclude that the district court's admission of the OSHA reports was not an abuse of its broad discretion [under Rule 403].").

Here, unlike in *Crawford*, the OSHA Documents contain more than mere summaries of prior accidents at the Mill. In *Crawford*, the parties leveraged OSHA's summaries to show (1) the negligent design of the blade that injured the plaintiff and (2) the defendant's notice of substantially similar incidents and subsequent failure to exercise reasonable care. *Id.* at 1337, 1351–52. Furthermore,

while the *Crawford* documents contained "double hearsay" and were admitted at trial, the Eleventh Circuit affirmed the district court's admission of those documents because (1) "[the defendant] never specifically pointed to any portion of any reports that constituted double hearsay"; and (2) because of that fact, "[e]ven if one or two sentences of double hearsay crept into evidence," the Eleventh Circuit could not "conclude that there would be reversible error, and certainly not plain error." *Id.* at 1350.

It is clear then that *Crawford* does not stand for the proposition that all documents prepared by OSHA shall be admitted into evidence over hearsay and Rule 403 objections. And, as noted above, *Crawford* dealt with one OSHA investigator—not two—so there was no question as to who authored each part of the report. For these reasons and others that IP outlines,[18] the Court finds that *Crawford*'s only application here is for the statements of law and guiding principles it advances.

### v.   **The Court did not previously resolve the matter.**

Finally, and as the Court already explained during the pretrial conference, the Court has not already ruled on this issue. While "a district court may consider

---

[18]   ECF 280-1, at 18–20.

a hearsay statement in passing on a motion for summary judgment if the statement *could be reduced to admissible evidence* at trial or reduced to admissible form," *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (emphasis added), and the Court found at summary judgment that the OSHA report was "capable of being reduced to an admissible form" at trial such that the Court could consider it at summary judgment, it is now clear that Plaintiffs cannot reduce these documents into admissible form. Therefore, Plaintiffs cannot surmount the evidentiary hurdles between the OSHA Documents' probative value and their admission into evidence.[19]

### vi.   The Specific Exhibits

Because, at this stage, the OSHA Documents lack the essential elements of trustworthiness required by Rule 803(8) and are substantially more prejudicial than probative under Rule 403, they should be excluded in their entirety. Notwithstanding that finding, the Court outlines specific barriers to admissibility for each component of the OSHA Documents.

---

[19]   ECF 240.

>           *a.*     **Plaintiffs' Exhibits 69–70**

>           *1.*     **The Violation Worksheets**

The Violation Worksheets are inadmissible for a few reasons in addition to those discussed above. First, they comprise citations that OSHA issued to IP. The citation in Exhibit 69's Violation Worksheet, for example, was dismissed (which Plaintiffs concede), and the citation in Exhibit 70's Violation Worksheet was settled without IP admitting fault,[20] but the Violation Worksheets do not reflect these facts, which could confuse the jury. On this point only, the Court finds IP's citation to *Lacey v. Arkema Inc.*, persuasive. No. 3:10-CV-00669-BAJ, 2014 WL 1327792, at *5 (M.D. La. Mar. 31, 2014). In that case, the district court—accepting that OSHA is a trustworthy source of information generally—noted: "Issuance of this Citation does *not* constitute a finding that a violation of the Act has occurred *unless* there is a failure to contest as provided for in the Act *or,* if contested, *unless* this Citation is affirmed by the Review Commission or a court." *Id.*[21]

---

[20]   ECF 286, at 2; ECF 206-2, at 223–24.

[21]   Although the Violation Worksheets here do not contain such a disclaimer, the parties do not dispute that they were similarly contestable. As a result, the Court questions whether the Violation Worksheets contain legal conclusions, as IP argues, but finds them inadmissible under Rule 403 regardless.

Second, both Violation Worksheets are appended to the Instance Descriptions, and presumably rely on the inadmissible "double hearsay" the Instance Descriptions contain.

Third, each Violation Worksheet also contains an "Abatement Completed Description," which details the OSHA investigators' understanding of IP's repairs or changes made after Mr. Giusto's accident that, if made prior to his fall, purportedly could have prevented it; in other words, the Violation Worksheets contain inadmissible evidence of subsequent remedial measures. Fed. R. Evid. 407. For these additional reasons, the Court questions whether the Violation Worksheets are trustworthy and excludes them, in any case, under Rule 403.

## 2.    The Instance Descriptions

The Instance Descriptions are likewise excludable under Rules 805 and 403. These documents contain summaries of witness interviews. Some of the witnesses are anonymous, and neither party has been able to identify them. In addition to the reasons discussed above, the Court finds it fundamentally unfair to present summaries of these unknown witnesses' statements to one or both OSHA investigators without any opportunity for IP to cross-examine them and meaningfully defend itself. These statements amount to the double hearsay that was not present in *Crawford*. Even if Plaintiffs could assert an exception to the

hearsay rule and surmount Rule 805, it is impossible to determine to what extent the OSHA investigators relied on the unknowns' statements in preparing the Violation Worksheets or whether those statements were accurately summarized.

Other witnesses whose statements are contained in the Instance Descriptions are members of IP's management. Their statements might not be hearsay under Fed. R. Evid. 801(d)(2), which would alleviate double hearsay concerns. But such statements may be if Plaintiffs attempted to admit them through the Instance Descriptions at trial, so—not unlike in the context of designating deposition testimony—Plaintiffs have no need to use an OSHA summary of known, available witnesses' testimony.[22] And to admit summaries of some known witnesses' testimony and some unknown witnesses' testimony would likely confuse the jury. Therefore, the Court excludes the Instance Descriptions in their entirety under Rule 403.

---

[22] Of course, as with deposition testimony, Plaintiffs are not precluded from impeaching witnesses with their prior statements contained in the OSHA Documents. Fed. R. Evid. 801(d)(1)(A); *id.* 1972 advisory committee's note to 1972 proposed amendments to Fed. R. Evid. 801(d)(1)(A); *cf.* Fed. R. Civ. P. 32(a)(2).

b.    **Plaintiffs' Exhibit 71: The Chase Interview**

The Chase Interview is also excluded from evidence. Plaintiffs deposed Chase.[23] Between that deposition and the face of Exhibit 71, it is clear that Chase did not write or sign the Chase Interview.[24] Chase himself noted: "I don't think I would have declined to sign if [the OSHA investigator] would have asked me to sign it."[25] Though, as Plaintiffs assert, Chase agreed that Plaintiffs' Exhibit 71 was "an accurate memorialization of what [he] said to the OSHA investigator,"[26] Chase also said, "[T]he questions aren't written there, so you can take anything that I say and apply it to anything you want, it seems like."[27] The Court shares this concern.

It would be far more prejudicial than probative to admit the Chase Interview without any of this explanation, especially given that Plaintiffs deposed Chase, and he may be a witness at trial. Further, Chase's deposition testimony calls into question the *Beech Aircraft* factors—including the OSHA investors' skill, experience, and bias, which Plaintiffs insist are not at issue—and suggests that this

---

23   ECF 190-1.

24   *Id.* at 13; ECF 206-9, at 5 (indicating that Chase "declined to sign" in the field marked "Signature of Interviewee").

25   ECF 190-1, at 26.

26   *Id.*

27   *Id.*

evidence is not trustworthy under Rule 803(8). In any event, it would only confuse the jury to admit the Chase Interview as a standalone piece of evidence under Rule 403. Plaintiffs may nevertheless impeach Chase with this report at trial if the opportunity arises.

The Court **GRANTS** IP's motion in limine related to the OSHA Documents (ECF 280).

### B.     Exclusion of Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert witness evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires "district courts to perform a 'gatekeeping' role concerning the admissibility of expert testimony." *Seamon v. Remington Arms Co., LLC*, 813 F.3d

983, 988 (11th Cir. 2016) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding *Daubert's* "gatekeeping obligation" applies to all types of expert testimony described in Rule 702). The Court's role is "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). But the Court must remain mindful to not "supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596).

The Eleventh Circuit applies a three-part inquiry to adjudicate a *Daubert* challenge:

> (1) whether the expert witness is qualified to testify competently regarding the matters he intends to address;
>
> (2) whether the methodology by which the expert witness reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

> (3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of the expert testimony shoulders the burden of establishing each element. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

### 1.    Plaintiffs' Motion to Exclude Certain Opinions and Testimony of J.C. Upshaw Downs, M.D.[28]

Plaintiffs move to exclude Dr. Downs's Opinion 6—that Mr. Giusto "ingested a significant quantity of ethanol on the day he [died]" on the grounds that it (1) is not reliable, (2) would not assist the trial of fact in understanding the evidence, and (3) lacks a factual foundation.[29]

### i.    The Reliability of Dr. Downs's Opinion 6

The parties have been down this road before with other experts.[30] The Court repeats that Rule 702 permits a witness to be qualified as an expert based on his or her experience in the relevant field. Fed. R. Evid. 702. *See also Frazier*, 387 F.3d at

---

[28]   ECF 246.

[29]   *Id.*

[30]   ECF 255.

1260–61 ("While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."). According to the Advisory Committee Notes, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. *See also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("[T]here is no question that an expert may still properly base his testimony on professional study or personal experience.").

But the "unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). What a proponent cannot do is establish admissibility "merely by the *ipse dixit* of an admittedly qualified expert." *Frazier*, 387 F.3d at 1261. *See also Kumho*, 526 U.S. at 157 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Daubert*, 509 U.S. at 590 ("Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known."); *Frazier*, 387 F.3d at 1261 ("[T]he gatekeeping role requires a district court to make a

reliability inquiry . . . the expert's bald assurance of validity is not enough.")
(quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)
(on remand)).

Plaintiffs assert that Dr. Downs's methodology is unreliable by his own
admission.[31] They principally contend that Dr. Downs's statements at
deposition—that his analysis relied on an "assumption" and that a "significant
quantity of alcohol" is "not a little"—demonstrate the unreliability of his methods.
"Retrograde extrapolation," Plaintiffs contend, is "the methodology most similar
to what Dr. Downs appears to have done to reach his BAC[32] estimate," and it
"requires more than a single postmortem blood alcohol test."[33] Meanwhile, IP
argues the opposite—that Dr. Downs's methodology is reliable, supported by
medical literature, and applied reliably to provide a range of BAC levels that
Mr. Giusto may have had at his time of death, any of which support Opinion 6.[34]

---

[31]  *Id.* at 3.

[32]  BAC, or blood alcohol concentration, "refers to the percent of alcohol (ethyl alcohol or ethanol) in a person's blood stream." *What Is BAC?*, STANFORD UNIV. OFF. OF SUBSTANCE USE PROGRAMS EDUC. & RES., https://super.stanford.edu/alcohol-drug-info/buzz-buzz/what-bac (last visited Nov. 22, 2021).

[33]  *Id.* at 6.

[34]  ECF 253, at 2, 5, 11–12, 14.

To determine whether a qualified expert's methodology is reliable, courts generally consider:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

*Seamon*, 813 F.3d at 988 (quoting *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004)). With this framework in mind, the Court finds Dr. Downs's methodology reliable. Plaintiffs' own expert rebutted Dr. Downs's calculations, so they are evidently capable of being tested.[35] *Id.* Dr. Downs cites the medical literature supporting his methodology.[36] IP acknowledges that Dr. Downs's methodology is not without its faults, which is why Dr. Downs (1) calculated a range of BAC levels Mr. Giusto may have had and (2) consulted other evidence for his ultimate opinion that Mr. Giusto died from "multiple preexisting pathologies and alcohol use, not infected burn wounds."[37] And IP avers that Dr. Downs has reliably applied generally accepted methodology to this case's facts, as evidenced by his report.[38]

---

[35]   *Id.* at 12.

[36]   ECF 149-2, at 20–21.

[37]   *Id.*; ECF 253, at 1.

[38]   ECF 253, at 2.

Plaintiffs complaints go not to the reliability of Dr. Downs's methodology, but rather his factual foundation for Opinion 6. Seeing only a challenge to the exactness of Dr. Downs's calculation, the Court finds sufficient indicia of reliability to pass *Daubert* muster.

ii.    **Whether Dr. Downs's Opinion 6 Would Help the Trier of Fact**

Plaintiffs next argue that Dr. Downs's Opinion 6 would not be helpful to the trier of fact. To be admissible, an expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The touchstone of this inquiry is the concept of relevance." *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Daubert*, 509 U.S. at 591). *See also Allison*, 184 F.3d at 1312 (stating that proposed expert testimony must "logically advance[ ] a material aspect of the proposing party's case"). The testimony must "concern matters that are beyond the understanding of the average lay person"; for example, testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Prosper*, 989 F.3d at 1249 (quoting *Frazier*, 387 F.3d at 1262–63).

Because Dr. Downs made assumptions in his calculation as discussed above, Plaintiffs argue that his calculation is "so imprecise and implies such a large

margin of error that it would not be helpful to the jury."[39] IP points out that the exact value of Mr. Giusto's BAC "is not important to Dr. Downs's analysis and is not the subject of his opinion. . . . Dr. Downs's opinion will help [the jury] determine" Mr. Giusto's cause of death.[40] The crux of IP's argument is persuasive. Dr. Downs's analysis essentially works backward from a range of Mr. Giusto's potential BAC levels to reach the conclusion that Mr. Giusto's BAC must have been higher earlier in the day.[41] From this estimate and conclusion, Dr. Downs opines that Mr. Giusto "consumed a potentially lethal amount of alcohol on the day he died," no matter where in the range of exemplar BAC levels Mr. Giusto's actual BAC fell.[42] As a result, Dr. Downs concludes that Mr. Giusto died because of his intoxication, not his fall at the Mill.

In this wrongful death action in which the jury will be tasked with determining why Mr. Giusto died, it is difficult to imagine evidence more relevant or helpful than an opinion about the cause of death. *See* Fed. R. Evid. 401 (Evidence is relevant so long as it has "any tendency to make the existence of any fact that is

---

[39]   ECF 246-1, at 10.

[40]   ECF 253, at 15.

[41]   *Id.* at 8.

[42]   *Id.*

of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (citation omitted) ("It is not necessary that the item of evidence alone convinces the trier of fact or be sufficient to convince the trier of fact of the truth of the proposition for which it is offered."); *Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 829 (11th Cir. 2012) (affirming the district court's admission of an expert's BAC analysis and finding that, at most, it was harmless error where that calculation "[i]f nothing else, . . . aided the jury in determining the accuracy of [the decedent's] memory of the circumstances surrounding her fall, which were hotly debated at trial"). The Court finds this analysis will help the jury understand the ultimate issue in this case.

### iii.   Whether Dr. Downs's Opinion 6 Has Adequate Factual Foundation

Plaintiffs' reply brief illustrates their core contention: "Dr. Downs's opinion is based on a single data point[,] a postmortem blood sample showing a BAC of .021."[43] An expert's opinions must be supported by a sufficient factual basis. *Cook*, 402 F.3d at 1111. *See also Frazier*, 387 F.3d at 1260 (stating that *Daubert* "inherently requires the trial court to conduct an exacting analysis of the foundations of expert

---

[43]   ECF 260, at 5.

opinions to ensure they meet the standards for admissibility under Rule 702"). Like all aspects of the *Daubert* inquiry, the proponent bears the "burden of laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison*, 184 F.3d at 1306.

IP avers that Dr. Downs modeled Mr. Giusto's likely BAC, acknowledging assumptions he made as they relate to alcohol metabolism and absorption and pointing to evidence in the record for those assumptions.[44] Indeed, IP admits that Dr. Downs "did not perform a calculation to determine, and has not opined on [Mr.] Giusto's precise blood-alcohol content at a precise time."[45] Plaintiffs call that insufficient and rely on their expert who speculates that the postmortem blood test Dr. Downs used in his calculation "could be result of an error in the testing . . . and other variables that limit the usefulness of the procedure."[46] However, what Plaintiffs call insufficient and inadmissible is really only "shaky" evidence. *Allison*, 184 F.3d at 1311 (quoting *Daubert*, 509 U.S. at 596). Plaintiffs need not worry that this evidence will poison the well. This Circuit and the Supreme Court prescribe

---

[44]   ECF 253, at 7–8.

[45]   *Id.* at 7.

[46]   ECF 246-1, at 2–3 (quoting ECF 177-2 (Gowitt Rebuttal Report)).

the antidote: "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.*

The Court **DENIES** Plaintiffs' motion to exclude (ECF 246).

### 2.  IP's Motion to Limit the Opinions and Testimony of Gerald T. Gowitt, M.D.[47]

IP moves to limit two parts of Dr. Gowitt's testimony: (1) opinions about the circumstances of Mr. Giusto's fall and (2) opinions about Mr. Giusto's pain and suffering. IP asserts this testimony should be excluded because Dr. Gowitt is not qualified to testify about either, his findings lack sufficient foundation, and these opinions are not helpful to the jury.

#### i.  The Fall

Because "Plaintiffs are not offering Dr. Gowitt to provide expert opinions about how Mr. Giusto came in contact with scalding liquid or what caused Mr. Giusto to fall," IP's first concern is alleviated.[48] Plaintiffs do not advance Dr. Gowitt as a "fall expert"; they do not claim he has superior knowledge regarding the act, circumstances, or mechanics of falling. Indeed, Plaintiffs have

---

[47]  ECF 243.

[48]  ECF 247, at 2.

arguably conceded that Mr. Giusto fell.[49] Regardless, as a matter of common sense, Dr. Gowitt's reference to Mr. Giusto's fall in the expert report in the "Opinions" section does not make the fact of Mr. Giusto's fall an opinion.[50] Dr. Gowitt's opinion is on Mr. Giusto's cause of death, and the fall is foundational evidence, which IP can call into question through vigorous cross-examination. *See Frazier*, 387 F.3d at 1260; *Allison*, 184 F.3d at 1311.

Dr. Gowitt's opinions regarding the extent of Mr. Giusto's pain and suffering require additional analysis, however.[51]

---

[49] ECF 243-1, at 3 ("His *cause of death* is disputed.") (emphasis added); ECF 191-2 (IP's Statement of Material Facts), ¶ 51 ("Just like the hospital records, Mr. Giusto did not mention the cause of his fall."); ECF 191-1 (IP's Brief in Support of Summary Judgment), at 5 ("Summary judgment is warranted when the *why* and *how* of the fall is based on speculation, and summary judgment is warranted for this reason alone in this case") (emphasis added). Plaintiffs seem to dispute the *how* and the *why* Giusto fell, not the *what*—that he in fact fell.

[50] ECF 118-1, at 4. For example, in addition to Dr. Gowitt's expert opinion that "Michael Giusto sustained second- and third-degree thermal and/or chemical burns," Dr. Gowitt's Opinion 1 also includes the facts underpinning that opinion: Mr. Giusto fell "at the International Paper Company Flint River Mill," and that Mr. Giusto underwent "multiple excisional debridements." *Id.* Inclusion of these facts in the "Opinions" section of his expert report does not mean that Dr. Gowitt is offering an expert opinion that the fall occurred at the Mill or that Mr. Giusto received skin grafts. *Id.* These facts, like Dr. Gowitt's mention of Mr. Giusto's fall, undergird his opinions; they are not his opinions.

[51] IP asserts in its reply that Plaintiffs' supplemental affidavit (Gowitt Affidavit) for Dr. Gowitt was untimely filed, so the Court should disregard it. The Court construes IP's reply [ECF 251] as an objection and **SUSTAINS** it. The Court **DISREGARDS** the Gowitt Affidavit [ECF 248; 248-1]. Fed. R. Civ. P. 26

ii.    **Pain and Suffering**

*a.*    **Dr. Gowitt's Qualifications**

IP argues that "[t]hose portions of [Dr.] Gowitt's Opinions 1, 2, and 5 that address [Mr.] Giusto's pain and suffering should be excluded under *Daubert*'s qualification prong."[52] Rule 702 permits a witness to be qualified as an expert based on his or her experience in the relevant field. Fed. R. Evid. 702. *See also Frazier*, 387 F.3d at 1260–61. As to qualifications, "expert status may be based on knowledge, skill, *experience,* training, or education." *Id.* at 1261 (quoting Fed. R. Evid. 702) (emphasis added). As a general matter, "Rule 702 takes a liberal approach to expert witness qualification." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006).

---

requires that "[a] party must make [expert witness] disclosures at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D). Instead, Plaintiffs filed the Gowitt Affidavit on July 20, 2021, months after discovery closed on September 8, 2020. ECF 151 (Amended Scheduling Order), at 2. Filing the Gowitt Affidavit contemporaneously with their response to IP's motion to limit Dr. Gowitt's testimony was both unjustified and harmful to IP. "Moreover, at a minimum, [Plaintiffs] could have filed a motion to extend the discovery period so as to permit a proper disclosure." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). Thus, the Court proceeds with its analysis without considering any new information included in the Gowitt Affidavit.

52    ECF. 243-1, at 10.

IP avers that Dr. Gowitt "is a forensic pathologist and medical examiner" who has "never treated a living patient, has no experience treating burn injuries, and has no expertise assessing the degree that burn injuries cause pain and suffering."[53] Dr. Gowitt graduated with honors from the University of North Carolina at Chapel Hill Medical School and has been a licensed medical doctor for 38 years.[54] He has been the Chief Medical Examiner of Rockdale County since 2006, the Chief Medical Examiner of DeKalb County since 2000, and the Chief Medical Examiner for Hall and Henry Counties since 1987. He is an eminently qualified physician. Although IP is correct that Dr. Gowitt's credentials do not evidence a specialized background in pain treatment, the Court disagrees that this renders him unqualified.

Rule 702 and *Daubert* mandate that the subject matter of the witness's testimony match his or her area of proficiency. *See, e.g., Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1376 (M.D. Ga. 2007). But an "expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008). *See also Maiz*, 253 F.3d at 665 (rejecting the argument that the proffered expert was

---

[53]   *Id.* at 3.

[54]   ECF 118, at 2.

unqualified because he lacked experience in the specific field of real estate development); *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004) (recognizing that a "physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline"). For this reason, and because this Court is not bound by a Georgia Superior Court decision, the Court declines to follow the court's lead in the *Coker* Order as IP advocates.[55] *Key v. Wise*, 629 F.2d 1049, 1058 (5th Cir. 1980).

As summarized by one district court, "a witness qualified as an expert in one subject may not offer expert testimony on another subject," but "[g]eneral knowledge in a field . . . is normally sufficient to qualify a witness as an expert in that field's specialties as well." *Goforth v. Paris*, No. CIVA 5:02-cv-94 HL, 2007 WL 988733, at *3 (M.D. Ga. Mar. 30, 2007). *See also Trilink*, 583 F. Supp. 2d at 1304 ("[I]f there are gaps in an expert witness's qualifications or knowledge, they generally go to the weight of the witness's testimony not its admissibility.") (punctuation omitted).

Given Dr. Gowitt's education and experience, the Court finds him qualified to opine on issues of pain and suffering, generally. Requiring Dr. Gowitt to have

---

[55]   ECF 251-1, at 1–8 (*Coker* Order); ECF 243-1, at 9–10.

performed a skin graft or to have treated a burn victim disregards his fundamental medical knowledge of the human nervous system and would disregard *Daubert's* "flexible and case specific" inquiry—*Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1331 n.13 (11th Cir. 2014)—and impermissibly "set a burden that is much too high." *Moore*, 995 F.3d at 854. Dr. Gowitt's qualifications might be fertile ground for cross-examination, but not grounds for exclusion.

> **b.    Whether Dr. Gowitt's Opinions on Mr. Giusto's Pain and Suffering Have Sufficient Factual Foundation and Would Help the Trier of Fact**

IP argues that "[Dr.] Gowitt's pain and suffering opinions fail on both reliability and helpfulness grounds." Because IP discusses these elements together, the Court considers them together.

IP argues that Dr. Gowitt's reliance on his "fundamental medical knowledge" and assurance that evidence of Mr. Giusto's pain and suffering is "in the medical record" are insufficient because Dr. Gowitt "did not point to any reviewed materials indicating that [Mr.] *Giusto* experienced extreme pain, nor did he reference any verifiable sources" (*e.g.*, medical treatises).[56] IP contends that Dr. Gowitt's opinions that debridement and skin grafting are "extremely painful

---

[56]    *Id.* at 10–11.

procedures" are based on what Dr. Gowitt called "common sense."[57] Therefore, according to IP, these opinions are not helpful to the trier of fact.[58]

IP's arguments are unpersuasive. Courts in this district routinely find that any conflict between an expert's proffered testimony and the underlying evidence or facts goes to the weight—not admissibility—of the testimony. *E.g., Cameron v. Teeberry Logistics, LLC,* No. 3:12-cv-181-TCB, 2013 WL 7874709, at *4 (N.D. Ga. May 21, 2013); *Mims v. Wright Med. Tech., Inc.,* No. 1:11-cv-213-TWT, 2012 WL 12835870, at *2 (N.D. Ga. May 11, 2012); *Souder v. Floyd Cnty., Ga.,* No. CIV.A. 4:03-cv-0085-HLM, 2005 WL 6218033, at *6 (N.D. Ga. Mar. 22, 2005). The Court agrees with this principle, and finds sufficient foundation for Dr. Gowitt's opinion concerning pain and suffering. Further, because "[t]he touchstone of [the helpfulness] inquiry is the concept of relevance," the Court finds that Dr. Gowitt's opinion would aid the jury. *Prosper*, 989 F.3d at 1249.

Dr. Gowitt might have concluded from the record that Mr. Giusto suffered severe pain. Nobody disputes that Mr. Giusto had thermal burns and that he sat through multiple skin grafts; Mr. Giusto's medical records need not say that he suffered severe pain for Dr. Gowitt to draw that conclusion based on his education

---

[57]   *Id.* at 11.

[58]   *Id.* at 11–12.

and training. If Dr. Gowitt's review of the record is somehow insufficient, it is IP's prerogative to point that out during cross-examination. Further, Mr. Giusto's pain is a central question in this case. As a doctor armed with general knowledge of the human nervous system, Dr. Gowitt is better positioned to help the jury understand to what extent Mr. Giusto suffered pain. Any analogy to something "common" like a "sunburn" does not render Dr. Gowitt's opinion less helpful because it is more accessible or understandable.[59] Expert testimony should "concern matters that are beyond the understanding of the average lay person" *and* aid the average lay person's understanding of those matters. *Prosper*, 989 F.3d at 1249.

IP's motion to limit Dr. Gowitt's testimony is **DENIED** (ECF 243).

## C.  Exclusion of Apportionment Affirmative Defense

Following the recent Supreme Court of Georgia ruling in *Alston & Bird, LLP v. Hatcher Management Holdings, LLC*, 862 S.E.2d 295 (Ga. 2021), as well as the Georgia Court of Appeals' decision in *Georgia CVS Pharmacy, LLC v. Carmichael*, No. A21A0677, 2021 WL 5049438, at *9 (Ga. Ct. App. Nov. 1, 2021), Plaintiffs orally renewed their motion opposing IP's Notice of Nonparty Fault related to Mr. Giusto's employer, Prim Industrial Contractors, Inc.[60] Relatedly, Plaintiffs had

---

[59]   *Id.* at 11.

[60]   ECF 197.

moved to strike IP's Notice of Nonparty Fault implicating Bilfinger Industrial Services, Inc.,[61] and had also moved in limine to exclude IP's apportionment defense on other grounds.[62]

The Supreme Court of Georgia held in *Alston & Bird* that the "apportionment under OCGA § 51-12-33 (b) does not apply to tort actions brought against a single defendant." 862 S.E.2d at 302. The Georgia Court of Appeals applied this rule earlier this month in *Carmichael*, which had been whittled down to a single-defendant case by the time of trial. 2021 WL 5049438, at *2 n.1, *9 ("Carmichael also initially sued various companies . . . but these other defendants were apparently dismissed before trial. CVS was the only named defendant at trial. . . . In this case, just as in *Alston & Bird, LLP*, CVS was the only named defendant in the case by the time the case proceeded to trial."). Under Georgia's substantive apportionment law, "when only one named defendant is present in the case, OCGA § 51-12-33 (a) controls and provides that damages may only be reduced or apportioned based on the amount of fault assigned to the plaintiff." *Id.* at *8.

---

[61]   ECF 261.

[62]   ECF 278, Mot. 3.

IP acknowledged the controlling authority of *Carmichael* in an email to the Court, which the Court appreciates. Thus, IP shall not raise its apportionment defense at trial with respect to anyone other than Mr. Giusto. The Court **GRANTS** Plaintiffs' motion in limine (ECF 278, Mot. 3). Plaintiffs' oral motion (addressing ECF 197) and motion to strike (ECF 261) are **DENIED AS MOOT**.

III.    Conclusion

IP's Motion in Limine regarding the OSHA Documents [ECF 280] is **GRANTED**; Plaintiffs' Motion to Exclude Expert Testimony [ECF 246] is **DENIED;** Defendant's objection to Plaintiffs' supplemental expert affidavit [ECF 251] is **SUSTAINED**; IP's Motion to Exclude Expert Testimony [ECF 243] is **DENIED**; Plaintiffs' motion in limine [ECF 278, Mot. 3] is **GRANTED**; and Plaintiffs' renewed oral motion and motion to strike [ECF 261] are **DENIED AS MOOT**.

**SO ORDERED** this the 23rd day of November 2021.

Steven D. Grimberg
United States District Court Judge